UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 MAY -9  PM 5: 07

CLERK

BY_____
DEPUTY CLERK

| | |
|---|---|
| DAVID D'AMBROSIO, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| KIKA SCOTT, Senior Official Performing | ) |
| the Duties of the Director of the U.S. | ) |
| Citizenship and Immigration Services, | ) |
| ANDREW J. DAVIDSON, Acting Deputy | ) |
| Director of the U.S. Citizenship & | ) |
| Immigration Services, KRISTI NOEM, | ) |
| Secretary of the Department of Homeland | ) |
| Security, TODD LYONS, Acting Director | ) |
| of Immigration & Customs Enforcement; | ) |
| PAMELA BONDI, U.S. Attorney General, | ) |
| | ) |
| Respondents. | ) |

Case No. 2:25-cv-468

**ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER**
**(Doc. 5)**

**Background**

The following facts are drawn from the Complaint (Doc. 1) and the documents attached

to the Complaint.

Petitioner David D'Ambrosio is a national of Italy. (Doc. 1 ¶ 10.) He entered the United

States lawfully in April 2017 and has lived in the United States ever since. (*Id.* ¶ 18.) Mr.

D'Ambrosio married a U.S. citizen in August 2019. (*Id.*) U.S. immigration law provides a path

to legal permanent resident ("LPR") status and citizenship for non-citizen spouses of U.S.

citizens. 8 U.S.C. § 1154. Under these laws, a non-citizen spouse may not, under most

circumstances, petition for status on their own behalf; instead, the U.S. citizen spouse must

petition on the non-citizen's behalf. *Id.* § 1154(a)(1)(A)(i). However, the Violence Against

Women Act of 1994 and its subsequent reauthorizations amended the Immigration and

Nationality Act ("INA") to allow the abused spouse, intended spouse, or former spouse of a U.S. citizen to file a petition on their own behalf. *See* Pub. L. 103-322, Title IV, 108 Stat. 1976, 1902 (Sept. 13, 1994); *see also*, Pub. L. 113-4, 127 Stat. 54, 110 (Mar. 7, 2013). In his Complaint, Mr. D'Ambrosio alleges that his spouse subjected him to physical, emotional, and psychological abuse. (Doc. 1 ¶ 18.) Based on that abuse, Mr. D'Ambrosio filed a VAWA self-petition in March 2025, as well as an application to adjust his immigration status to that of an LPR. (*Id.* ¶ 21.)

The United States Citizenship and Immigration Services ("USCIS") has not yet adjudicated Mr. D'Ambrosio's applications. (*Id.*) Nor has Mr. D'Ambrosio's attorney received a receipt notice from USCIS confirming that it received the application.

Mr. D'Ambrosio is subject to a final order of removal from the United States, which was issued on April 7, 2025, approximately one month after he submitted his VAWA self-petition. (Doc. 1-4.) The basis for his removal is that he stayed in the United States for longer than the period authorized by his visa. (Doc. 1 ¶ 20.) He has been in Immigration and Customs Enforcement ("ICE") custody since February 19, 2025, when he took a wrong turn when driving in Vermont "and mistakenly crossed over the Canadian border." (*Id.* ¶ 19.) Canadian officials returned Mr. D'Ambrosio to the United States, where the Department of Homeland Security ("DHS") detained him, then transferred him to ICE custody. (*Id.*)

Until recently, ICE had a formal policy against initiating removal proceedings "against an individual known to be the immediate victim or witness to a crime" in the absence of "special circumstances or aggravating factors." ICE Policy Number 10076.1 (June 17, 2011), https://www.ice.gov/doclib/foia/prosecutorial-discretion/certain-victims-witnesses-plaintiffs.pdf [https://perma.cc/UDT3-VWH5]. The only "serious adverse factors" listed in the policy were

"national security concerns or evidence the [noncitizen] has a serious criminal history, is

involved in a serious crime, or poses a threat to public safety." *Id.* On January 30, 2025, the

Government issued ICE Policy Number 11005.4, interim guidance that rescinds the prior

directive. ICE Policy Number 11005.4, https://www.ice.gov/doclib/foia/policy/11005.4.pdf

[https://perma.cc/2NAG-2VD2]. As a result, people like Mr. D'Ambrosio who have filed

VAWA self-petitions now have significantly less protection against removal.

      Indeed, Mr. D'Ambrosio's ICE case officer has informed him that he will be removed

from the United States within the next two weeks. (Doc. 1 ¶ 17.) If he is removed before USCIS

adjudicates his application for adjustment of status, his application will be automatically denied.

8 C.F.R. § 245.2(a)(4)(ii). He will also face a 10-year bar to reentering the United States. *Id.*

§ 1182(a)(9)(A). It is all but a certainty that Mr. D'Ambrosio will be removed before the

adjudication of his petition, as the expected adjudication time for a VAWA self-petition is

42 months. (Doc. 1-3.)

**<u>Analysis</u>**

      Mr. D'Ambrosio's Complaint raises two claims, both under the Administrative

Procedures Act ("APA"). The first is for unreasonable delay in the adjudication of his VAWA

self-petition and his application for adjustment of status. The second cause of action challenges

the recission of ICE Policy Number 11005.3 as arbitrary and capricious. Mr. D'Ambrosio

currently seeks a stay of removal pending the adjudication of his claims.

      The APA specifically contemplates situations like these, where a court can only provide

meaningful review of a petitioners claims if it maintains the status quo. Thus, the APA provides

that, "[o]n conditions as may be required and to the extent necessary to prevent irreparable

injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the

3

effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. Although the Second Circuit has not addressed the issue, other courts have held that the standard for a stay under 5 U.S.C. § 705 is the same as that for a preliminary injunction. *See New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d 279, 294 (S.D.N.Y. 2020); *see also State of Ohio ex rel. Celebrezze v. Nuclear Regul. Comm'n*, 812 F.2d 288 (6th Cir. 1987).

Because the standard for a preliminary injunction and a stay under 5 U.S.C. § 705 are identical, the court focuses on the law governing preliminary injunctions.

> In general, a plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of a preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest.

*Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024) (cleaned up). Although each factor is important, "[t]he showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (cleaned up). When the Government is a party in a lawsuit, "'the Government's interest *is* the public interest,' [so] the balance of the hardships and public interest merge as one factor." *Saget v. Trump*, 375 F. Supp. 3d 280, 339–40 (E.D.N.Y. 2019) (quoting *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d 502, 673 (S.D.N.Y. 2019)).

## I.      Irreparable Harm

"The irreparable harm requirement is the single most important prerequisite for the issuance of a preliminary injunction. This requirement must therefore be satisfied before the other requirements for an injunction can be considered." *State Farm Mut. Auto. Ins. Co. v.*

4

*Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024) (internal quotation marks and citations omitted).  "[I]rreparable harm exists where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Id.* (internal quotations marks and citation omitted).

The risk of irreparable harm in this case is serious.  If the Government removes Mr. D'Ambrosio from the United States, his application for adjustment of status will be denied, and he will be barred from returning to the United States for 10 years.  The United States has been Mr. D'Ambrosio's home for eight years.  Being removed from his community, likely permanently, surely constitutes irreparable harm.  The likely permanent loss of the opportunity to obtain LPR status in the Untied Status certainly also constitutes irreparable harm.

## II.    Likelihood of Success on the Merits

Mr. D'Ambrosio argues that USCIS has failed to adjudicate his petition "within a reasonable time" in violation of 5 U.S.C. § 555(b).  The court has the power "to compel agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706.  Mr. D'Ambrosio has submitted evidence that USCIS generally takes 42 months to adjudicate VAWA petitions. (Doc. 1-3.)  Mr. D'Ambrosio has not received a receipt notice for his application and has therefore been unable to request that USCIS expedite review of his application.  (Doc. 1 ¶ 5.) And Mr. D'Ambrosio faces imminent removal.

In adjudicating cases of undue delay, courts look to the six factors set out in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"):

1. Whether the time the agency takes to make a decision is governed by a "rule of reason";

2. Any statutory timetable or indication of the speed Congress expects;

3. That delays are less tolerable when human health or welfare is at stake;

4. The effect of expediting delayed action on agency activities of a competing or higher priority;

5. The nature and extent of the interests prejudiced by delay;

6. That no impropriety is required to find the delay unreasonable.

Based on the current filings, the court concludes that Mr. D'Ambrosio is likely to succeed on his claim of unreasonable delay. Though USCIS typically proceeds on a "first-in-first-out" basis, it also has an established policy for expediting certain requests. USCIS Policy Manual, Vol. 1, Part A, ch. 5, https://www.uscis.gov/policy-manual/volume-1-part-a-chapter-5#footnote-1 [https://perma.cc/C5XK-SKMB]. It appears that Mr. D'Ambrosio may meet the criteria identified by USCIS, yet the delay in providing Mr. D'Ambrosio with a receipt notice for his application has prevented him—for two months—from requesting that USCIS expedite its review. That delay, in itself, appears to be unreasonable given Mr. D'Ambrosio's situation. Additionally, given "the nature and extent of the interests prejudiced by delay" in Mr. D'Ambrosio's case, it appears that a 42-month adjudication period would be unreasonable in his case. Mr. D'Ambrosio further notes that many cases have found unreasonable delay in immigration cases where the adjudication time was far shorter than the 42 months at issue here. (*See* Doc. 6 at 7–9 (collecting cases).)

## III.    Balancing the Equities and the Public Interest

In analyzing the last two injunction factors, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," as well as "the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "To establish that the

balance of hardships tips in their favor, the plaintiff must demonstrate that the harm they would

suffer absent the relief sought is substantially greater than the harm the defendants would suffer

if the injunction were granted." *New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d at 305. As

noted above, the last two factors merge when the Government is a party in the case. *Saget*,

375 F. Supp. 3d at 339–40.

In this case, issuing a stay would appropriately balance the equities and serve the public

interest. Although the Government has an interest in swiftly executing removal orders, the

court's order would only temporarily prevent Mr. D'Ambrosio's removal during the adjudication

of his claim for relief. Further, the sole basis for Mr. D'Ambrosio in this case is that he

overstayed his visa. And Congress enacted VAWA and similar visa programs for victims of

crime because it has recognized the significant public interest in enabling victims to report

crimes without fear of negative immigration consequences. *See* USCIS Policy Manual, Vol. 3,

Part D, ch. 1, https://www.uscis.gov/policy-manual/volume-3-part-d-chapter-1

[https://perma.cc/6SUX-KWPK].

The narrow relief of a 14-day temporary restraining order will appropriately balance the

equities in this case. Such a short delay will not unduly prejudice the government and will allow

the court time to further assess the merits of Mr. D'Ambrosio's case without risking irreparable

harm to Mr. D'Ambrosio in the interim.

## IV.  Power to Issue a Stay of Removal

Although not raised by Petitioner, the court briefly addresses the issue of jurisdiction and

the power of the court to grant the requested relief. Immigration law is an area in which

Congress has restricted judicial review, sometimes quite substantially. These restrictions are

particularly stringent with respect to the Executive Branche's power and discretion to remove a

noncitizen from the United States. To that end, 8 U.S.C. § 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter."

Additionally, Congress has provided that only circuit courts, not district courts, may review final orders of removal. Thus, 8 U.S.C. § 1252(a)(5) provides that "a petition for review filed with the appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." Finally, 8 U.S.C. § 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 or such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

These jurisdiction-stripping provisions do not prevent the court's review in this case, nor does it prevent the court from staying Mr. D'Ambrosio's removal pending these proceedings. Mr. D'Ambrosio is not challenging his removal order, its validity, or the power of the government to execute his removal order should USCIS ultimately deny his VAWA petition. Rather, he is asserting his right to have his VAWA petition adjudicated and his complaint "arises from" that alleged right. District courts regularly hear such claims. That Mr. D'Ambrosio has an order of removal does not change anything. True, in this case, the court will not be able to adjudicate the merits of Mr. D'Ambrosio's legal claims if it does not stay his removal during the

pendency of the proceedings. But the final relief Mr. D'Ambrosio seeks is not a stay of removal. The stay is merely a means to adjudicating a different claim.

As noted above, a court with jurisdiction of a claim under the APA has the power to preserve the status quo so it can undertake meaningful review and prevent irreparable harm. In this case, preserving the status quo means issuing a stay of removal.

The court in *Siahaan v. Madrigal*, No. 20-cv-2618, 2020 WL 5893638 (D. Md. Oct. 5, 2020), reached the same conclusion. There, as here, the petitioner had a final order of removal. And, as here, the petitioner sought to prove he was eligible for collateral relief, in that case asylum and protection under the Convention Against Torture. He sought to reopen his immigration case so his claims for relief could be adjudicated. But he faced the prospect of removal before he could have his claims adjudicated. He therefore sought a stay of removal from the court. The Government challenged the district court's jurisdiction in light of 8 U.S.C. § 1252(g).

As the court in *Siahaan* wrote, "[w]hat matters most for the purposes of the § 1252(g) analysis in this case is determining exactly what decision or action of the Attorney General Siahaan is challenging." *Id.* at *3. In *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) ("*AADC*"), the Supreme Court explained that § 1252(g) is a narrow provision that applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 482. The Court explicitly rejected a broad reading of the phrase "arising from" or the notion that § 1252(g) refers "to all claims arising from deportation proceedings." *Id.* The Supreme Court returned to these issues in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), in which a legal permanent resident sought to challenge his removal following conviction of a drug

offense. Although *Jennings* concerns other "jurisdiction stripping" provisions discussed below, Justice Alito's decision for the majority recognized the continuing authority of the *AADC* decision in restricting § 1252(g) to "the three listed actions of the Attorney General." *Id.* at 294.

The court in *Siahaan* reviewed these same Supreme Court decisions and concluded the petitioner was not challenging his removal order. Rather, he was pursuing "his statutory right to move to reopen, apply for asylum, and protection under the [Convention Against Torture]." 2020 WL 5893638, at \*5. The district court in *Joshua M. v. Barr*, 439 F. Supp. 3d 632 (E.D. Va. 2020) reached a nearly identical conclusion in similar circumstances. In both cases, the district courts ordered stays of removal pending the proceedings.

As for 8 U.S.C. §§ 1252(a)(5) and (b)(9), the Second Circuit has held that "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). Here, Mr. D'Ambrosio does not seek from the court any relief that would undermine the power of the Government to remove him. Rather, he merely seeks an order that USCIS adjudicate his petition for adjustment of status. That adjudication may ultimately be unfavorable, in which case the Government will be able to move forward with Mr. D'Ambrosio's removal. The interim step of staying Mr. D'Ambrosio's removal does not affect that conclusion.

## Conclusion

Pursuant to Fed. R. Civ. P. 65 and 5 U.S.C. § 705, the court GRANTS the motion for a Temporary Restraining Order. The court orders that Petitioner, David D'Ambrosio, not be

removed from the United States while this order remains in effect.

Dated at Burlington, in the District of Vermont, this 9th day of May, 2025.

/s/ Geoffrey W. Crawford____
Geoffrey W. Crawford, Judge
United States District Court