# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID D'AMBROSIO, ) ) Petitioner, ) ) v. ) ) JOSEPH D. MCDONALD, JR., et al., ) ) Respondents. ) | Civil Action No. 25-10782-FDS |

### MEMORANDUM AND ORDER ON PETITIONER'S
### MOTION TO REOPEN, RECONSIDER, AND VACATE JUDGMENT

**SAYLOR, J.**

Petitioner David D'Ambrosio, an immigration detainee currently held at the Plymouth County Correctional Facility, has filed a motion pursuant to Fed. R. Civ. P. 60(b) to reopen, reconsider, and vacate the Court's April 9, 2025 memorandum and order denying his petition for writ of habeas corpus.[1] He challenges the Court's holding that his detention is governed by 8 U.S.C. § 1231, and contends that events subsequent to the Court's decision—specifically, the temporary stay of removal issued by the First Circuit—render § 1226(a) the proper statutory basis for his detention. In turn, he seeks a bail hearing as provided by the implementing regulations of § 1226(a).

However, the temporary stay of D'Ambrosio's removal has since been vacated, and the First Circuit has denied each of his ensuing motions to stay his removal pending appeal.

---

[1] D'Ambrosio names the following individuals as respondents: Joseph D. McDonald, Jr., Sheriff, Plymouth County Sheriff's Office; Antone Moniz, Superintendent, Plymouth County Sheriff's Office; Kristi Noem, Secretary of the Department of Homeland Security; Todd Lyons, Assistant Secretary of Immigration & Customs Enforcement; Pamela Bondi, United States Attorney General; and Patricia Hyde, Boston Field Office Director for Detention and Removal, Immigration & Customs Enforcement.

Accordingly, and for the following reasons, the motion to reopen, reconsider, and vacate the April 9 judgment will be denied.

**I.     Background**

    **A.     Initial Detention and Visa Applications**

D'Ambrosio is an Italian citizen who entered the United States in April 2016 under the Visa Waiver Program ("VWP"), which permits a noncitizen visitor to remain in the United States for 90 days after entry. *See O'Riordan v. Barr*, 925 F.3d 6, 8 (1st Cir. 2019) (citing 8 U.S.C. § 1187(a)(1)). In August 2019, petitioner married a United States citizen, who allegedly subjected him to physical, emotional, and psychological abuse.

On February 19, 2025, while driving in Vermont, petitioner mistakenly drove into Canada, where officials immediately directed him to return to the United States because he lacked proper travel documentation. Upon his return to the United States, officials from the Department of Homeland Security ("DHS") apprehended and detained him because he had overstayed his admission period under the VWP. He was then transferred to the custody of Immigration and Customs Enforcement ("ICE") and has since been detained in the Plymouth County Correctional Facility in Plymouth, Massachusetts.

In March 2025, D'Ambrosio filed two visa applications that are currently pending before the United States Citizenship and Immigration Services ("USCIS"). The first is a Form I-485 application seeking an adjustment in his residency status from a temporary to a permanent resident. The second is a Form I-360 application seeking relief as a victim of domestic violence under the Violence Against Women Act, 34 U.S.C. §§ 12291, *et seq.* ("VAWA").

    **B.     Petition for Writ of Habeas Corpus**

On April 2, 2025, D'Ambrosio filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in this court asserting that his detention violated the Due Process Clause of the Fifth

Amendment.  On April 5, 2025, a final administrative removal order ("FARO") was executed and, two days later, it was served on D'Ambrosio.  The order authorized DHS officials to immediately remove him to Italy.  (*See* ECF No. 24).

On April 7, 2025, the Court held a hearing and took the matter under advisement.  Two days later, the Court issued a memorandum and order denying the petition on the ground that the FARO rendered D'Ambrosio's detention subject to 8 U.S.C. § 1231(a), which legally required the Attorney General to detain him for 90 days pending his removal from the United States. (ECF No. 26).

### C. Appeal to the First Circuit

On April 8, 2025, D'Ambrosio appealed the FARO to the First Circuit and moved for a stay of removal pending appeal.  The next day, pursuant to First Circuit Local Rule 18.0, the court stayed his removal for 10 business days.  Order of Court, *D'Ambrosio v. Bondi*, No. 25-1342 (1st Cir. Apr. 9, 2025).

On April 18, 2025, the First Circuit denied petitioner's motion for a stay of removal pending the resolution of his petition for review, holding that he had "not made the required 'strong showing that he is likely to succeed on the merits' of his petition."  Order of Court, *D'Ambrosio v. Bondi*, No. 25-1342 (1st Cir. Apr. 18, 2025).  The court then vacated the temporary stay.  *Id.*

On May 5, 2025, the First Circuit denied D'Ambrosio's motion for reconsideration of the denial of his motion for a stay.  Order of Court, *D'Ambrosio v. Bondi*, No. 25-1342 (1st Cir. May 5, 2025).  Then, on May 21, 2025, the court reiterated that "[a]ny renewed request for a stay of removal by petitioner is denied."  Order of Court, *D'Ambrosio v. Bondi*, No. 25-1342 (1st Cir. May 21, 2025).  The appeal of his FARO remains pending.

### D. Ancillary Proceedings Involving Claims Under the Administrative Procedure Act

On May 9, 2025, D'Ambrosio filed a copy of an order entered by the United States District Court for the District of Vermont granting an *ex parte* motion for a temporary restraining order prohibiting his removal from the United States. *D'Ambrosio v. Scott*, 2025 WL 1504312, at *6 (D. Vt. May 9, 2025). He did not provide any background or explanation as to the order's relevance to the instant motion. (*See* ECF No. 34). Nevertheless, that matter appears to have involved two claims asserted under the Administrative Procedure Act ("APA"), including (1) a claim that the USCIS has unreasonably delayed the adjudication of his VAWA application and (2) a claim that ICE arbitrarily and capriciously rescinded its policy against deporting victims of domestic violence. *D'Ambrosio*, 2025 WL 1504312, at *2-3. He did "not challeng[e] his removal order, its validity, or the power of the government to execute his removal order should [it] ultimately deny his VAWA petition." *Id.* at *8.

Two weeks later, after a hearing and further briefing from the parties, the court in Vermont lifted the TRO and denied D'Ambrosio's motion for a preliminary injunction as to his removal; the court concluded that he had failed to show a strong likelihood of success on the merits of his APA claims. *D'Ambrosio v. Scott*, 2025 WL 1502936, at *4 (D. Vt. May 23, 2025). D'Ambrosio voluntarily dismissed that case on June 20, 2025. *See* ECF No. 26, *D'Ambrosio v. Scott*, No. 25-cv-00108 (D. Vt.).

### E. Motion to Reopen, Reconsider, and Vacate

On April 10, 2025, D'Ambrosio filed a motion to reopen, reconsider, and vacate the Court's denial of his petition for writ of habeas corpus, asserting that his detention is not subject to § 1231, as the Court held, but is instead subject to § 1226(a), which affords a bail hearing to detainees and does not legally require detention pending removal. He further contends that the

4

First Circuit's temporary stay of his removal renders § 1231 inapplicable until the court issues a final order on the merits of his appeal. Respondents filed an opposition brief on April 24, 2025. D'Ambrosio replied on May 7, 2025, and respondents, with leave of court, filed a sur-reply on July 17, 2025.

## II.     Legal Standard

As a preliminary matter, motions for post-judgment relief filed within 28 days of entry of judgment are made under Fed. R. Civ. P. 59(e), and all other motions for post-judgment relief are made under Rule 60(b). *See Merchia v. Virginia Bd. of Med.*, 2019 WL 1961075, at *1 (D. Mass. May 2, 2019). Because petitioner's motion was filed within 28 days of entry of judgment, the Court will treat it as a motion for relief under Rule 59(e).

Rule 59(e) grants federal courts the power to vacate judgments, but such relief is "granted sparingly, and only when 'the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations.'" *Fontanillas-Lopez v. Morell Bauza Cartagena & Dapena, LLC*, 832 F.3d 50, 55 (1st Cir. 2016) (quoting *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014)). "A motion for reconsideration is not the venue to undo procedural snafus or permit a party to advance arguments it should have developed prior to judgment, nor is it a mechanism to regurgitate old arguments previously considered and rejected." *Biltcliffe*, 772 F.3d at 930 (internal quotations and citations omitted).

## III.    Analysis

Petitioner asserts that due to subsequent events in the case, the Court's April 9 holding that he is detained pursuant to 8 U.S.C. § 1231 is no longer correct. (Mot. at 8). He contends that the governing statute is instead § 1226(a)—which provides additional procedural measures for detainees and does not legally mandate detention—because the First Circuit entered a

temporary stay of his removal when he filed his appeal. He therefore seeks to vacate the Court's prior judgment and requests that his detention be deemed subject to § 1226(a).

Section 1226 applies to the apprehension and detention of a noncitizen *before* a determination has been made as to his removability. *See* 8 U.S.C. § 1226(a). Under § 1226(a), the Attorney General is permitted, but not required, to detain a noncitizen pending his removal determination. *See id.* The statute's implementing regulations also afford noncitizens "an individualized bond hearing to determine whether release pending removal is appropriate." *Gordon v. Johnson*, 991 F. Supp. 2d 258, 261 (D. Mass. 2013) (citing 8 C.F.R. § 1236.1(d)).

However, once "an alien is ordered removed," his detention becomes subject to § 1231, which provides that "the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C § 1231(a)(1)(A). During that 90-day period—defined as the "removal period"—the statute dictates that "the Attorney General *shall* detain the alien," thereby legally mandating the detention of a noncitizen who has been ordered removed. *Id.* § 1231(a)(2)(A) (emphasis added).

Here, petitioner's initial detention in February 2025 was governed by § 1226(a) because he had not yet been ordered removed. But as the Court explained in its April 9, 2025 decision, once the FARO was executed and served on petitioner on April 7, the removal period commenced under § 1231(a)(1)(B)(i), and he was therefore subject to mandatory detention under § 1231(a)(2)(A). (ECF No. 26).[2]

---

[2] In general, an order of removal becomes final at the earlier of "(1) 'a determination by the [Board of Immigration Appeals ("BIA")] affirming such order,' or (2) 'the expiration of the period in which the alien is permitted to' petition the BIA for review of the order." *Riley v. Bondi*, 145 S. Ct. 2190, 2198 (2025) (quoting 8 U.S.C. § 1101(a)(47)(B)). However, the finality of a removal order is "tie[d] to . . . agency review." *Id.* A FARO is not subject to review before an immigration judge or the BIA. *Id.*; *see also* 8 C.F.R. § 217.4(b). Thus, "the period to seek review expires as soon as the FARO is issued—meaning that the order becomes final immediately upon issuance." *Riley*, 145 S. Ct. at 2198 (internal quotations omitted). Here, the FARO was issued on April 7, 2025, and immediately rendered petitioner's removal "administratively final" under § 1231(a)(1)(B)(i).

Petitioner contends that notwithstanding the issuance of the FARO, the removal period was suspended by the First Circuit's temporary stay of his removal. He asserts that at that time, his detention once again became subject to § 1226(a), not § 1231.

The commencement of the 90-day removal period—and, by extension, the applicability of § 1231—may be postponed under certain circumstances. The statute provides that "[t]he removal period begins on the latest of the following":

> (i) The date the order of removal becomes administratively final.
>
> (ii) *If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order*.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (emphasis added). The statute therefore makes clear that a noncitizen is not within the statutory removal period and is "not detained for purposes of § 1231 until the *latest* of three enumerated events, including 'the day the removal order becomes administratively final' *or* 'if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order.'" *Reid v. Donelan*, 64 F. Supp. 3d 271, 276-77 (D. Mass. 2014) (emphasis in original).[3] If a removal order has been stayed, then "the individual subject to the order is not within any 'removal period.'" *Id.* As a result, until the reviewing court issues its final order, the noncitizen's detention is subject to § 1226(a), not § 1231. *Id.* at 276 ("Indeed,

---

[3] Respondents contend that individuals who are pursuing appeals of their FAROs are nonetheless held under § 1231, rather than § 1226(a), because the "removal period" commences on the date that the order of removal becomes administratively final—that is, when the FARO is executed and served on a noncitizen. However, as the district court in *Reid* remarked, that argument "overlooks the preceding phrase" in the statute stating that the removal period commences "on the *latest* of the following . . ." 64 F. Supp. 3d at 276 (emphasis in original). A stay of removal may therefore postpone the commencement of the removal period and the applicability of § 1231 even if a FARO has already been issued. *See id.*

7

every circuit to consider the matter has found that § 1226 continues to govern the detention in this situation.") (collecting cases).

Here, on April 9, 2025—two days after the FARO was served on petitioner—the appeals court temporarily stayed petitioner's removal for 10 business days pursuant to First Circuit Local Rule 18.0. Order of Court, *D'Ambrosio v. Bondi*, No. 25-1342 (1st Cir. Apr. 9, 2025). Normally, that would render petitioner's detention subject to § 1226(a), not § 1231. *See Reid*, 64 F. Supp. 3d at 276.[4] However, nine days later, the court denied petitioner's motion for a stay of removal pending the resolution of his petition for review and vacated the temporary stay that had previously been entered. Order of Court, *D'Ambrosio v. Bondi*, No. 25-1342 (1st Cir. Apr. 18, 2025).[5]

The parties thus dispute two interrelated issues concerning the effect of those orders on the statutory authority governing petitioner's detention. First, they dispute whether the initial 10-day stay in fact suspended the removal period under § 1231(a)(1)(B)(ii), thereby reverting the governing statute back to § 1226(a). Second, they disagree as to whether the First Circuit's subsequent vacating of the stay reinstated § 1231 detention and restarted the removal period, or whether § 1226(a) continues to govern until the court reaches a final determination on the merits of the FARO appeal.

---

[4] Respondents assert that a temporary stay that is administratively issued pursuant to a local rule does not qualify as a stay order under § 1231(a)(1)(B)(ii), and cannot therefore delay the commencement of the removal period and § 1231 detention. (ECF No. 28 at 8). However, district courts have consistently deemed such administrative stays as operative under § 1231(a)(1)(B)(ii), and the text of the statute does not otherwise indicate that they are excluded. *See, e.g.*, *Wilson v. Green*, 2016 WL 4571389 at *2-3 (D.N.J. Sept. 1, 2016) (holding that a temporary stay of removal granted by the Third Circuit "[p]ursuant to a standing order . . . pending a decision on [the petitioner's] stay motion . . . reverted him to § 1226[] detention"); *see also* 8 U.S.C. § 1231(a)(1)(B)(ii).

[5] The First Circuit also denied petitioner's motion for reconsideration and has made clear that all future requests for a stay of removal pending appeal would be denied. Order of Court, *D'Ambrosio v. Bondi*, No. 25-1342 (1st Cir. May 5, 2025).

Courts have consistently held that temporary stays of removal automatically suspend § 1231 detention and the removal period, but that once the stay is vacated, § 1231 again governs and the removal period restarts. *See, e.g.*, *Payano v. Lowe*, 2016 WL 6995433, at *2 (M.D. Pa. Nov. 30, 2016). In *Payano*, the petitioner's removal order became administratively final on October 6, 2016. *Id.* at *1. He then appealed that decision to the Third Circuit and concurrently sought a stay of removal pending appeal. *Id.* The appeals court initially entered a temporary stay of removal, but lifted it on November 8, 2016, while denying the motion to stay his removal because the "[p]etitioner ha[d] not shown a likelihood of success on the merits of his petition for review." *Id.* The district court held that although under § 1231(a)(1)(B)(i), the petitioner's "removal period began on October 6, 2016, . . . the [90]-day removal period did not commence until November 8, 2016, when the Third Circuit lifted its temporary stay of removal upon deciding that [the] [p]etitioner did not satisfy the requirements for a stay of removal pending a decision on his petition for review." *Id.* at *2.[6]

Like in *Payano*, here, the First Circuit initially entered a temporary administrative stay, but later vacated it because petitioner had "not made the required 'strong showing that he is likely to succeed on the merits' of his petition." Order of Court, *D'Ambrosio v. Bondi*, No. 25-1342 (1st Cir. Apr. 18, 2025). Thus, the removal period—which, under § 1231(a)(1)(B)(i),

---

[6] Several other courts have reached the same conclusion. *See Samba v. Lowe*, 2020 WL 599839, at *3 (M.D. Pa. Feb. 7, 2020) (holding that a detainee's removal period began "when the Third Circuit Court of Appeals denied his motion to stay and vacated its temporary stay of removal"); *Green*, 2016 WL 4571389 at * 2-3 (stating that a noncitizen's detention during temporary stay of removal was governed by § 1226, but reverted to § 1231 when the Third Circuit lifted its temporary stay and denied the motion for stay of removal); *Sofowora v. Ashcroft,* 2005 WL 2135198, at *3 (E.D. Cal. Sept. 2, 2005), *report and recommendation adopted*, 2005 WL 3284563 (E.D. Cal. Nov. 29, 2005) (stating that the removal period commenced upon the "lifting of the temporary stay by the Ninth Circuit"); *see also Brown v. Lanoie*, 2014 WL 12586735, at *3 (D. Mass. Aug. 4, 2014) (stating that "the most sensible reading of [§ 1231] is that the removal period does not begin until after a court of appeals either '(1) denies the motion for a stay or (2) grants the motion and finally denies the petition for review'") (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059-60 (9th Cir. 2008)). Indeed, the Supreme Court has noted that "a court order lifting a stay" of removal "triggers [] the removal period" under § 1231. *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.5 (2021).

initially began on April 7, 2025, upon issuance of the FARO—was suspended on April 9 when the First Circuit issued the 10-day stay, temporarily reverting the statutory basis for petitioner's detention to § 1226(a).  *See Green*, 2016 WL 4571389 at * 2-3; *see also Reid*, 64 F. Supp. 3d at 276-77.  However, soon thereafter, on April 18, 2025, petitioner's detention once again became subject to § 1231 when the First Circuit vacated the stay, thereby restarting the removal period. *See Payano*, 2016 WL 6995433, at *1.[7]

Section 1231 therefore properly governs petitioner's detention at this time.[8]  Accordingly, the motion to reopen, reconsider and vacate the Court's April 9, 2025 judgment will be denied.

## IV.    Conclusion

For the foregoing reasons, the motion to reopen, reconsider, and vacate judgment is DENIED.

**So ordered.**

---

[7] Petitioner's case in the United States District Court for the District of Vermont does not affect the applicability of § 1231 to his detention or the commencement of the removal period.  That matter involved two claims under the APA challenging the processing of his VAWA application and a change in ICE's removal policy; he did "not challeng[e] his removal order, its validity, or the power of the government to execute his removal order" should his VAWA petition be denied.  *D'Ambrosio*, 2025 WL 1504312, at *8.  Although the court entered a TRO to initially prohibit petitioner's removal pending review of his APA claims, the "beginning of the removal period is not delayed by every judicially entered stay, . . . and the entry of a stay of removal for any [] reason *other than review of a removal order* . . . does not prevent the removal period from beginning[.]" *Diouf v. Mukasey*, 542 F.3d 1222, 1230 (9th Cir. 2008) (internal quotations omitted) (emphasis added); *see also Fonua v. United States*, 2024 WL 4332650, at *3 (D. Nev. Sept. 27, 2024) (holding that a noncitizen's detention was governed by § 1231, not § 1226, even though he had a pending petition for review challenging the denial of his motion to reopen).

Because petitioner's case in Vermont did not involve a "review of a removal order," the applicability of § 1231 is not altered by the court's initial TRO.  In any event, the court subsequently lifted the TRO and denied a motion for preliminary injunction as to petitioner's removal.  *D'Ambrosio*, 2025 WL 1502936, at *4.

[8] It is true that the 90-day removal period—which recommenced on April 18, 2025—ended on July 17, 2025.  *See* 8 U.S.C. § 1231(a)(1)(A).  However, "the removal period may be extended if the alien is . . . removable as a result of violations of status requirements[.]"  *Guzman Chavez*, 594 U.S. at 529; *see also* 8 U.S.C. § 1231(a)(6).  Here, petitioner is removable because he has overstayed his VWP admission period, and an extension of the § 1231 removal period beyond 90 days is therefore valid.

Moreover, detention under § 1231 is presumptively valid for six months. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).  After six months, a detained noncitizen may seek release by demonstrating that his removal is not likely to occur in the reasonably foreseeable future.  *Id.* at 699-700.  Here, petitioner has been detained for less than six months, rendering his detention under § 1231 presumptively valid at this time.

|  | /s/ F. Dennis Saylor IV |
|---|---|
|  | F. Dennis Saylor IV |
| Dated: August 4, 2025 | United States District Judge |